IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TESSERACTION GAMES INC., an Oregon Corporation, | Civ. No. 03-6280-AA<br>OPINION AND ORDER |
| Plaintiff,<br>v. | |
| GMX MEDIA, an unincorporated association doing business in the United Kingdom; MIKE BRIGHT, JON DESBOROUGH, PAUL WHITE, ISAAC BROWN, STEVEN HARDING, BARRY LEONARD and MARCUS AYODELE, individually; GM COMPANIES UK LIMITED, a private limited company incorporated in the United Kingdom; and GMX MEDIA SOFTWARE LIMITED, a private limited company incorporated in the United Kingdom, | |
| Defendants. | |

1   - OPINION AND ORDER

Gregory E. Skillman
Danna C. Fogarty
Skillman Fogarty P.C.
576 Olive Street, Suite 200
P.O. Box 10208
Eugene, OR  97440-2208
    Attorneys for plaintiff

David Wade
Heather M. Walloch
Doyle Gartland, Nelson, McCleery & Wade, P.C.
44 Club Road, Suite 200
P.O. Box 11230
Eugene, Or 97440-3430
    Attorneys for defendants GMX Media and Marcus Ayodele

Robert D. Newell
Patricia L. McGuire
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201
    Attorneys for defendant GM Companies UK Limited

AIKEN, Judge:

Plaintiff brings this diversity action for breach of contract and conversion pursuant to 28 U.S.C. § 1332(a)(2). Defendant GM Companies UK Limited moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and defendants GMX Media and Marcus Ayodele move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process. Defendants' motions to dismiss for lack of personal jurisdiction are granted and this case is dismissed.

## I. BACKGROUND

Plaintiff Tesseraction Games Inc. (Tesseraction) is an Oregon corporation, located in Eugene, Oregon. Second Amended Complaint p. 2. Tesseraction develops and sells video games, and is the creator, developer and owner of exclusive rights to a computer video game entitled *Enigma: Rising*

*Tide*. Second Amended Complaint p. 2-3. GMX Media is an unincorporated association of individuals and corporations located in the United Kingdom, engaged in a joint venture to manufacture, distribute, promote and sell computer video games in the United Kingdom and Europe.[1] Second Amended Complaint p. 3.

In June 2002, defendant Jon Desborough contacted Tesseraction via email on behalf of GMX Media to inquire whether Tesseraction had a publisher for *Enigma: Rising Tide* in the United Kingdom and Europe. Second Affidavit of Kelly Asay p. 2. In October 2002, Jon Desborough again sent Tesseraction an email inquiry regarding publishers for *Enigma: Rising Tide* in the United Kingdom and Europe. Second Affidavit of Kelly Asay p. 2. Tesseraction responded favorably to the inquiry and a distribution agreement was negotiated via telephone and email. Second Affidavit of Kelly Asay p. 2. The phone negotiations included the addition of a contract clause allowing Tesseraction to bring suit to enforce the agreement in a jurisdiction of its choice. Second Affidavit of Kelly Asay p. 3. Defendant Mike Bright executed the agreement for GMX Media in the United Kingdom, on December 21, 2002; and Kelly Asay executed the agreement for Tesseraction in

---

[1] There is some dispute among the parties as to this and other facts. For the purposes of building a prima facie case for personal jurisdiction, the court must resolve factual conflicts in plaintiff's favor. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)(quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). Therefore, the court will recite the facts as alleged by the plaintiff. Additionally, Tesseraction alleges that defendant GMX Media is "an unincorporated association of individuals and corporations located in the United Kingdom, engaged in a joint venture to manufacture, distribute, promote and sell computer video games in the United Kingdom and Europe." Second Amended Complaint p. 3. Plaintiff also alleges that defendants Marcus Ayodele and GM Companies UK Limited are members of the GMX Media joint venture and engaged in GMX Media's business. Second Amended Complaint p. 3. Marcus Ayodele and GM Companies UK Limited dispute plaintiff's characterization of them as members of the GMX Media joint venture. However, because factual conflicts must be resolved in plaintiff's favor for the purpose of finding a prima facie case for personal jurisdiction, the court will accept plaintiff's characterization of the facts and apply the minimum contacts test as though defendants GMX Media, GM Companies UK Limited, and Marcus Ayodele are a single entity.

Eugene, Oregon, on January 14, 2003. Second Affidavit of Kelly Asay p. 3.

Under the terms of the distribution agreement, Tesseraction gave GMX Media the authority to manufacture copies, distribute, promote and sell *Enigma: Rising Tide* to wholesalers and retailers of videogames in Europe. Second Amended Complaint p. 4. Tesseraction alleges in its complaint that GMX Media was required to pay Tesseraction royalties of forty percent of each game sold, or not less than $1,657,000. Second Amended Complaint p. 4. Between March 14, 2003, and June 9, 2003, defendant GM Companies made royalty payments to Tesseraction totaling $43,897. Second Amended Complaint p. 5. GM Companies also selected 50 sample copies of *Enigma: Rising Tide* and mailed them to Tesseraction in Oregon for inspection and quality control. Second Amended Complaint p. 5. Plaintiff alleges that between April and August 2003, GMX Media continued to sell copies of *Enigma: Rising Tide* in the European market, but failed to pay any royalties to Tesseraction due under the distribution agreement. Second Amended Complaint p. 5-6. Consequently, plaintiff filed suit in this court for breach of contract and conversion.

## II. STANDARD OF REVIEW

Where as here, the district court does not hold an evidentiary hearing on a motion to dismiss, the plaintiff "need only make a prima facie showing of jurisdictional facts in order to withstand a motion to dismiss." Unocal, 248 F.3d at 922 (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). If the facts in plaintiff's affidavit are uncontroverted, the court must take them as true for the purpose of a motion to dismiss. Id. If factual conflicts exist between the parties' affidavits, those conflicts must be resolved in the plaintiff's favor for the purpose of finding a prima facie case for personal jurisdiction. Id.

III. DISCUSSION

A. PERSONAL JURISDICTION

In order for a federal court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must show both that the forum state's long arm statute confers jurisdiction over the defendant, and that the court's exercise of jurisdiction does not violate due process. Haisten v. Grass Valley Medical Reimbursement Fund Ltd., 784 F.2d 1392 (9th Cir. 1986). Oregon's long-arm statute extends jurisdiction to the limits of due process. See Or. R. Civ. P. 4L; Gray & Co., v. Firstenburg Mach. Co. Inc., 913 F.2d 758, 760 (9th Cir. 1990); Oregon ex rel Hydraulic Servacontrols Corp. v. Dale, 294 Or. 381, 384, 675 P.2d 211, 212 (1982). Therefore, the two inquires collapse into one and the court proceeds under the standards of federal due process.

Due process is satisfied when the plaintiff can show that the nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 US 310, 316 (1945). There are two categories of personal jurisdiction that a court may exercise over a nonresident defendant, general or specific jurisdiction. Plaintiff does not allege general jurisdiction, so the court turns to a specific jurisdiction analysis. Specific jurisdiction requires that the cause of action before the court "arises out of or has substantial connection with" defendant's contacts with the forum. Hanson v. Denkla, 357 U.S. 235, 250-53 (1958).

The Ninth Circuit has articulated a three-part test to evaluate specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or

results from the defendant's forum related activities. (3) Exercise of jurisdiction must be reasonable.

Unocal, 248 F.3d at 923. In order for the court to exercise personal jurisdiction, plaintiff must present evidence to satisfy all three prongs of the test.

## I. PURPOSEFUL AVAILMENT

The first step of the test requires a finding of purposeful availment. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985) (internal quotations and citations omitted).

In McGlinchy v. Shell Oil Co., 845 F.2d 802 (9th Cir. 1988), William McGlinchy, a California resident, contracted with Shell International Chemical Company (SICC) to promote the sale of its products in Africa and the Middle East. Id. at 805. The contract was negotiated in England, but formally signed in California. Id. at 816. When SICC terminated the contract, McGlinchy brought suit against SICC in California District Court. Id. SICC moved to dismiss for lack of personal jurisdiction, and the District Court granted SICC's motion. Id. The Ninth Circuit upheld the District Court's decision, declaring that SICC had not purposefully availed itself of the benefits and protections of California law and therefore could not be haled into a California court. Id. at 815-16.

The Ninth Circuit declined to find purposeful availment in McGlinchy for four reasons. First, the contract at issue in McGlinchy was signed in California but negotiated in England. Id. at 816. The court declared that "because the substance of the relationship was formed in England, the formality of signing the contract in California cannot establish jurisdiction." Id.

6 - OPINION AND ORDER

(internal quotations omitted). In the case at bar the parties negotiated the distribution agreement via telephone and electronic mail and each party signed the agreement in its respective jurisdiction. Relying on McGlinchy, these facts do not rise to the level of purposeful availment. The defendants in McGlinchy actually traveled to California to sign the contract. Conversely, the defendants here, with contacts only via telephone and email, do not meet the required 'purposeful availment' as described in McGlinchy.

The second reason McGlinchy found no personal jurisdiction is because the contract did not refer to California or the United States as a forum for dispute resolution. Id. The distribution agreement in the case at bar provides that the "Agreement shall be governed by, and construed in accordance with the laws of the United Kingdom," and that the courts of England have jurisdiction to settle any dispute arising out of, or in connection with the agreement. The distribution agreement also provides that Tesseraction may bring suit in "any other court of competent jurisdiction." In contrast to the contract in McGlinchy, the distribution agreement in this case explicitly provides the courts of England as a forum for dispute resolution and both parties consented to that jurisdiction via the agreement.

Although plaintiff argues that the clause providing that suit may be brought in "any court of competent jurisdiction" creates jurisdiction for this court, this argument cannot stand. This court is a court of competent jurisdiction only if in fact it has personal jurisdiction over the parties. The clause does not refer to either the United States federal courts, or the state of Oregon. Therefore, the distribution agreement alone cannot establish jurisdiction for this court.

Since the Ninth Circuit found that a failure to note the forum state in an international agreement tended to show lack of purposeful availment by the defendant, the affirmative

7   - OPINION AND ORDER

provision of a forum in an agreement would seem to make purposeful availment even less likely. McGlinchy, 845 F.2d at 816. Therefore, this factor weighs in defendants' favor because the distribution agreement specifically references England as a forum for dispute resolution.

Third, in McGlinchy, none of SICC's authorized agents performed or executed any portion of the contract in California. Id. The parties executed and terminated the contract via international mail. Id. McGlinchy considered such contacts "insufficient to constitute an act purposefully availing SICC of California laws." Id. See also Unocal, 248 F.3d at 924 (finding that entry into contracts by fax or telephone does not constitute purposeful availment). None of the defendants here were ever alleged to have performed or executed any portion of the distribution agreement in Oregon. Defendants manufactured, distributed and sold *Enigma: Rising Tide* exclusively in Europe as per the distribution agreement. The parties corresponded regarding the distribution agreement via telephone and electronic mail. These contacts are not sufficient for this court to find purposeful availment by the defendants.

Finally, McGlinchy held that "[i]n the absence of contractual obligations by SICC, such as sale of goods or services to California residents or a deliberate presence in California," plaintiffs did not allege facts supporting a finding of purposeful availment. Id. Here, the defendants have accepted no contractual obligations to sell goods or provide services in Oregon, nor do any of the defendants maintain a deliberate presence in Oregon. None of the defendants maintain offices, agents, employees, or bank accounts in the United States. Memorandum in Support of Motion to Dismiss by Defendant GM Companies p. 2; Memorandum in Support of Defendants GMX Media and Marcus Ayodele's Motion to Dismiss p. 3. Both the Ninth Circuit and the United States Supreme Court have emphasized that a contract with an out-of-state party

alone does not create contacts sufficient for a court to exercise personal jurisdiction. See McGlinchy v. Shell Oil Co., 845 F.2d at 816 n. 9 (quoting Burger King Co. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

The facts here are similar to Doe v. Unocal, 248 F.3d 915 (9th Cir. 2001), in which the Ninth Circuit found no personal jurisdiction over the defendant Total S.A. In Unocal, Total presented evidence

> (1) that it entered into [the disputed] contracts either by fax or telephone or via meetings in Asia, France or Bermuda; (2) that the law governing the contracts [was] the law of England, Bermuda or Burma,; (3) that the oil in the pipeline [would] go to Thailand, and possibly to Burma, not to the U.S.; and (4) that the contracts all relate[d] to the pipeline in Burma and [had] nothing to do with California.

Id. at 924.

Citing McGlinchy, the Unocal court found that plaintiff's evidence was insufficient to satisfy Ninth Circuit standards. Id. Similarly, in the case at bar: (1) the parties entered into the distribution agreement over the telephone and via electronic mail; (2) the law governing the distribution agreement is the law of England; (3) the product at issue is sold only in Europe; and (4) the contract related to the sale and distribution of video games in Europe and had no connection with Oregon.

This court finds that the contacts alleged here are less persuasive than the contacts alleged in either McGlinchy or Unocal, and therefore this court finds no purposeful availment by the defendants.

### ii. REASONABLENESS

Even if the court were to assume purposeful availment by the defendants jurisdiction over defendants would not be reasonable.

9     -  OPINION AND ORDER

The third step of the Ninth Circuit's minimum contacts analysis requires a finding that the court's assertion of jurisdiction is reasonable. In other words, the court must conclude that the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. In considering whether an assertion of personal jurisdiction is reasonable, the court must address seven factors:

> (1) the extent of a defendant's purposeful interjection [into the forum state]; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. No one factor is dispositive; a court must balance all seven.

Panavision v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).

### a. Purposeful Interjection

"Even if there is sufficient 'interjection' into the [forum] state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." Id. (quoting Core-Vent Corp v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993)). In light of previous Ninth Circuit decisions it is highly unlikely that the defendants' interjection into the forum state in this case satisfies purposeful availment, let alone creates any greater contacts. As noted above, none of the defendants maintain offices, agents, employees, or bank accounts in the United States. The defendants' only contact with the forum state is through the contract at issue. This factor weighs against the court's exercise of personal jurisdiction.

### b. Defendant's Burden in Litigating

This factor is neutral. Although defendants GM Companies and GMX Media are UK corporations, and defendant Marcus Ayodele is a citizen and resident of Nigeria, "in this era of

fax machines and discount air travel," requiring the defendants to litigate in Oregon is likely not "Constitutionally unreasonable." Panavision, 141 F.3d at 1323.

### c. Sovereignty

A court must examine if and how the district court's exercise of personal jurisdiction over defendant conflicts with the sovereignty of defendant's state of domicile. See Id. The contract at issue stipulates that its provisions are to be governed by the laws of the United Kingdom and that the courts of England shall have jurisdiction to settle any dispute arising out of or in connection with the terms of the distribution agreement. Were this court to exercise personal jurisdiction over defendants it would implicate sovereignty concerns of the United Kingdom.

### d. Forum State's Interest

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities . . . ." Burger King, 471 U.S. at 473-74 (internal citations omitted). The state of Oregon has an interest in providing an effective forum for its injured citizens, and Tesseraction is an Oregon corporation. This factor weighs in Tesseraction's favor.

### e. Efficient Resolution

This factor relates to location of evidence and witnesses. Panavision, 141 F.3d at 1323. Because of modern advances in transportation and communication this factor is neutral. Id.

///

///

11   -   OPINION AND ORDER

///

f. Convenient and Effective Relief for Plaintiff

This factor is also likely neutral because, as noted above, advances in communication and transportation vitiate any claims of inconvenience raised by the plaintiff.[2]

g. Alternative Forum

The courts of England constitute an appropriate alternative forum. Certainly the courts of England are more experienced in the application of the laws of the United Kingdom, under which the distribution agreement by its terms, is to be governed. Both parties, via the distribution agreement, stipulated that England has jurisdiction to settle disputes arising from the terms of the agreement. Therefore, this court has no concern that plaintiff will be left without an adequate forum if this court declines to exercise personal jurisdiction over defendants. Although litigation in the United Kingdom will likely be inconvenient for plaintiff, as noted above, the court does not weigh the inconvenience to parties heavily when determining whether its exercise of jurisdiction is reasonable. Therefore, this factor weighs heavily in favor of defendants.

After weighing and balancing the reasonableness factors the court concludes that it would be unreasonable to exercise personal jurisdiction over defendants.

---

[2] In Core-Vent v. Nobel Indus., the Ninth Circuit declared that:
"The maintenance of a suit in Sweden may be costly and inconvenient for Core-Vent, but Core-Vent has not shown that its libel claims cannot be effectively remedied there . . . . In any event, neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff. As [the Ninth Circuit] noted in Garcia Marquez, 'no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference.'" 11 F.3d 1482, 1490 (9th Cir. 1993). Although maintenance of a suit in England will likely be costly and inconvenient for Tesseraction, a "mere preference on the part of a plaintiff for its home forum does not affect the balancing [test]." Id.

12 - OPINION AND ORDER

For the reasons listed above, the court finds that defendants GM Companies UK Limited, GMX Media, and Marcus Ayodele did not purposefully avail themselves of the benefits and protections of the state of Oregon, nor would the court's exercise of personal jurisdiction over defendants comport with "traditional notions of fair play and substantial justice." Defendants' motions to dismiss for lack of personal jurisdiction are therefore granted.

### B. INSUFFICIENT SERVICE OF PROCESS

Because the court finds that it lacks authority to exercise personal jurisdiction over defendants, it need not reach the question of whether service of process was sufficient.

### IV. CONCLUSION

For the reasons explained, the court declines to exercise personal jurisdiction over defendants. Accordingly, defendants GM Companies UK Limited, GMX Media, and Marcus Ayodele's motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (docs. 38 and 44) are GRANTED. Further, defendant GM Companies UK Limited's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  26  day of October 2005.

/s/ Ann Aiken<br>Ann Aiken<br>United States District Judge